NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MOHAMMED BASHIR and
VICTORIA DANTCHENKO,

      Plaintiffs,

v.

THE HOME DEPOT,
STORE #6911, et al.,

      Defendants.

Civil Action No. 08-04745 (JAP)

**OPINION**

PISANO, District Judge.

This product liability action is brought by Mohammed Bashir ("Plaintiff") and Victoria Dantchenko against defendants Home Depot, U.S.A., Inc. ("Home Depot") and Husqvarna U.S. Holdings, Inc. ("Husqvarna" and, together with Home Depot, the "Defendants"). Presently before the Court are the following motions: (1) a motion for summary judgment by Home Depot based on N.J.S.A. § 2A:58C-9(b) and (2) a motion for summary judgment by the Defendants based on Plaintiff's spoliation of evidence. Plaintiff opposes both motions. The Court decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth herein, the motions for summary judgment are denied.

**I.     FACTUAL BACKGROUND**

This matter involves Plaintiff's rental of a stump grinder from Home Depot on April 16, 2008. Home Depot was the retail lessor of that stump grinder, which was designed and manufactured by Husqvarna. [Home Depot Answers to Interrogatories, ¶¶ 15-16; Husqvarna

1

Answers to Interrogatories, ¶¶ 14 and 16]. Husqvarna includes an operating manual with the stump grinder and expects that users of the machine will read the operation and safety portions of the operating manual prior to use. [Richard Bednar Deposition at 61]. In addition, Husqvarna includes notices on the stump grinder itself instructing users to read the operating manual before using the machine. [Id. at 62-63].

Home Depot allows rental customers to waive their right to receive the operating manual. [Id. at 63]. Home Depot employee Enrico Saviano ("<u>Saviano</u>") testified that every machine is tested before it is rented to a customer. [Saviano Deposition at 39]. He also explained that, prior to renting a machine to a customer, he demonstrates the product, makes sure that the renter is comfortable with the machine and that they know how to operate it properly. [Saviano Deposition at 39]. He acknowledged feeling an obligation to talk certain customers out of renting a machine if he feels it is unsafe for them. [Id. at 76 and 151]. Saviano also acknowledged that customers should still read the operator's manual, despite receiving training from him on how to use a particular machine. [Id. at 174].

Plaintiff went to Home Depot on April 16, 2008, and inquired about renting a "root grinder." [Mohammed Bashir Deposition at 97]. He was assisted by Saviano. [Saviano Deposition at 180]. Upon seeing the size of the stump grinder, Plaintiff left Home Depot to get two day-laborers to help him with the machine. [Mohammed Bashir Deposition at 119-120]. After returning to Home Depot, Plaintiff completed the rental of the stump grinder and then brought it and the day-laborers home. [Id. at 120-122].

Plaintiff was injured when the stump grinder's blade came into contact with his leg while a day-laborer operated the machine in Plaintiff's backyard. Plaintiff testified that, after the blade came in contact with his foot and ankles, he fell onto his back. [Id. at 238-240]. He testified

that, immediately after falling to the ground, he was concentrating on how to control the blood that was pouring from his body. [Id. at 241]. Meanwhile, the day-laborers knocked on the door of Plaintiff's house to get the attention of Plaintiff's mother-in-law, who did not speak any English. [Id]. Plaintiff told her to bring him the phone and he dialed 911. [Id]. After the ambulance arrived and Plaintiff was being treated by medical personnel, he told his mother-in-law to return the stump grinder to Home Depot and asked her to take the day-laborers back as well. [Id. at 243]. Plaintiff did not ask his mother-in-law to take down contact information for the day-laborers or to inform Home Depot of the accident. [Id. at 244]. Plaintiff testified that he did not contemplate litigation until he discovered the Vermeer Stump Grinder, several months after the accident. [Id. at 498-499].

Plaintiff filed the second amended complaint in this product liability action on March 27, 2009. Plaintiff alleges that the stump grinder was defectively designed and that Husqvarna failed to include proper safety warnings with the machine. Plaintiff also claims that, although Husqvarna included warnings with the stump grinder that advised users to read the operating manual, Home Depot allowed its renters to waive reading the operating manual, and attempted to substitute reading the operating manual by providing its own training. Plaintiff offers the testimony of two experts, Mr. Gary Sheesley and Mr. John David Calvert, in support of his claims.

## II.   SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

3

248 (1986). "A factual dispute is 'genuine' and thus warrants trial 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. The non-moving party must then offer admissible evidence that establishes a genuine issue of material fact, id., not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. LEGAL ANALYSIS

#### A. Home Depot's Motion for Summary Judgment

According to the New Jersey Product Liability Act (the "NJPLA"), a product lessor will be relieved from liability for injuries caused by a defective product it leases to the public, provided that it files "an affidavit certifying the correct identity of the manufacturer of the product which allegedly caused the injury." N.J.S.A. § 2A:58C-9(a). Upon filing the affidavit, the product seller is then "relieved of all strict liability claims." N.J.S.A. § 2A:58C-9(b). Home

4

Depot argues that since it provided Plaintiff with sworn statements identifying Husqvarna, a named defendant in this case, as the designer and manufacturer of the stump grinder, it met its obligation under the statute and should be granted summary judgment.

However, subsection (d) of the NJPLA provides that a product seller can be held liable, even if it identifies the product manufacturer, under the following circumstances:

> (1) The product seller has exercised some significant control over the design, manufacture, packaging or labeling of the product relative to the alleged defect in the product which caused the injury, death or damage; or
>
> (2) The product seller knew or should have known of the defect in the product which caused the injury, death or damage; or the plaintiff can affirmatively demonstrate that the product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect in the product which caused the injury, death or damage; or
>
> (3) The product seller created the defect in the product which caused the injury, death or damage.

N.J.S.A. § 2A:58C-9(d). The burden is on the party seeking to take advantage of the immunity in subsection (b) to prove that the factors in subsection (d) do not apply by "presenting evidence to that effect or by pointing to a lack of evidence in the record supporting opposite conclusions." *Medley v. Freightliner LLC*, 2008 U.S. Dist LEXIS 62079 *22 (D.N.J. July 25, 2008) (citing *Claypotch v. Heller, Inc.*, 360 N.J. Super. 472, 483 (App.Div. 2003)). Therefore, Home Depot must prove that it is not liable under subsection (d) of the statute.

The purpose of the product seller immunity is "to reduce litigation costs borne by innocent retailers in product liability actions." *Claypotch*, 360 N.J.Super. at 485 (quoting Sponsor's Statement to S. 1495 of 1995, enacted as L. 1995, c. 141)). Under the NJPLA, a product seller is relieved from liability only if it is "truly innocent of responsibility for the alleged defective product and the injured party must retain a viable claim against the manufacturer." *Id.* Furthermore, the product seller immunity section of the NJLPA "carves out a

5

very limited exception to the PLA's overarching principle of imposing strict liability upon all entities in the chain of distribution, exempting only those whose exclusive role is to make the finished, packaged and labeled product available to consumers." *Smith v. Alza Corp.,* 400 N.J. Super. 529, 541 (App. Div. 2008).

In this case, Plaintiff alleges that Husqvarna included warnings with the stump grinder advising users to read the operating manual.  Plaintiff claims that Home Depot allowed its renters to waive reading the operating manual, and attempted to substitute Husqvarna's requirement of reading the operating manual through its own training.  Although Plaintiff does not mention the NJPLA, he implicitly invokes subsection (d)(1) of the statute by claiming that Home Depot exercised significant control over the "labeling" of the product.

In *Davala v. Mid-Hudson Clarklift of New Jersey, Inc.*, 2006 N.J. Super. Unpub. LEXIS 733 (App. Div. Jan. 27, 2006), the plaintiff sued the lessor of a three-wheel clamp unit, a vehicle similar to a forklift, for injuries sustained when she was struck by the vehicle as it backed up near where she was standing.  2006 N.J. Super. Unpub. LEXIS 733 at *1.  The vehicle did not have a back up alarm.  *Id*.  The court found that the lessor was not entitled to summary judgment stating:

> The record here was sufficient to establish that Mid-Hudson, as lessor of the equipment in question, performed routine service on the clamp unit for plaintiff's employer, was aware of the existence of both factory and aftermarket back-up safety alarms, and that its customers often inquired into the availability of such alarms.  Moreover, Mid-Hudson's job responsibilities as a servicing dealer for Clark included informing its customers of currently available safety equipment.

*Id*. at *11.  The court concluded that the lessor failed to warn or to take appropriate measures to advise the lessee of the dangers of the product.  *Id*.   In this case, Plaintiff has offered evidence that Home Depot exercised significant control over the safety warnings involving the stump grinder.  In particular, Home Depot permitted renters to waive reading the operating manual

6

containing the safety warnings and provided them with its own training on how to use the product. In addition, Plaintiff has presented evidence in the form of expert testimony showing that Home Depot did not take adequate measures to warn those renters of the dangers involved in using the stump grinder. Therefore, Home Depot's motion for summary judgment will be denied.

B.	The Defendants' Motion for Summary Judgment Based on Spoliation of Evidence

The Defendants move for summary judgment based on spoliation of the evidence, arguing that Plaintiff (1) failed to secure the identity of the day-laborers who operated the stump grinder and witnessed the accident and (2) returned the stump grinder without notifying Home Depot about the accident.

Spoliation is "the destruction of significant alteration of evidence, or the failure to preserve property for another to use as evidence in pending or reasonably foreseeable litigation." *Mosaid Techs., Inc. v. Samsung Elecs. Co.*, 348 F.Supp 2d 332, 335 (D.N.J. 2004) (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004)). "[T]he duty to preserve material evidence arises not only during litigation but also extends to that period before litigation 'when a party should have known that the evidence may be relevant to future litigation.' " *Major Tours, Inc. v. Colorel*, 2009 WL 2413631 *3-4 (D.N.J. 2009) (quoting *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998)). "[A] duty to preserve evidence . . . arises where there is: (1) pending or probable litigation involving the defendants; (2) knowledge by the plaintiff of the existence or likelihood of litigation; (3) foreseeability of harm to the defendants, or in other words, discarding the evidence would be prejudicial to defendants; and (4) evidence relevant to the litigation." *Hirsch v. General Motors Corp.*, 266 N.J.Super. 222, 250 (Law Div. 1993). However, "[t]he scope of the duty to preserve evidence is not boundless. A 'potential spoliator

need do only what is reasonable under the circumstances.' " *Callahan v. Stanley Works*, 306 N.J.Super. 488, 496 (Law Div. 1997) (quoting *Hirsch*, 266 N.J.Super. at 251).

      The Defendants argue that Plaintiff had a duty to ensure that the witnesses to the accident could be found and to preserve the post-accident condition of the stump grinder. They claim that Plaintiff's instruction to his mother-in-law, after the ambulance arrived on the scene, to take the day-laborers home and return the stump grinder to Home Depot, demonstrates that he feared discovery of some evidence showing culpable conduct on his part. According to the Defendants, the only reason that Plaintiff had to be concerned about the discovery of such evidence is if he contemplated an action or claim and intended to hide the facts. The Defendants claim that Plaintiff must have known that destroying crucial evidence about the witnesses and the stump grinder would prejudice the Defendants and that he intended to bring a claim for his injury against some entity.

      The Court declines to conclude that Plaintiff's instructions to his mother-in-law concerning the stump grinder and the day-laborers show that he intended to hide crucial evidence related to the accident. Plaintiff testified that, during the time period following the accident, he was focused on, among other things, controlling the blood that was pouring from his body and getting emergency assistance for his injury. Although Plaintiff did instruct his mother-in-law to return the stump grinder to Home Depot and take the day-laborers back to where he picked them up, he did so in the minutes following a serious medical emergency that resulted in the loss of part of his leg. The Defendants argue that Plaintiff's instruction to his mother-in-law shows that he feared discovery of inculpatory evidence. However, it could also show that he was aware of the seriousness of his injuries and that he would not be able to return the stump grinder to Home Depot himself. The Defendants have presented no evidence showing that Plaintiff knew of the

existence or likelihood of litigation at that time. In fact, Plaintiff testified that he did not consider litigation or consult an attorney until several months after the accident.

The Defendants rely on *Callahan v. Stanley Works*, 306 N.J.Super. 488, 496 (Law Div. 1997). In that case, the plaintiff, an employee at a hardware store, was injured while using a fork lift to move a pallet of storm doors. 306 N.J.Super. at 492. Shortly after the accident, the hardware store's loss prevention supervisor marked the pallet as evidence of the plaintiff's possible worker's compensation claim and put it aside. *Id.* at 493. The hardware store later misplaced the pallet. The Court found that special circumstances existed to create a duty to preserve evidence on the part of hardware store. *Id.* at 497. The Court found that the hardware store gratuitously undertook a duty to preserve when it marked the pallet as evidence and put it aside and should have foreseen that the evidence was material to a potential civil action. *Id.* The Court finds that the facts in the present case are distinguishable on at least two significant levels. First, in this case, Plaintiff was seriously injured, bleeding profusely and being loaded into an ambulance when the purported duty to preserve arose. Second, in *Callahan*, the Court found that the duty to preserve arose after the pallet was marked as evidence and put aside in anticipation of a workers' compensation claim. *Id.* In this case, aside from Plaintiff's instruction to his mother-in-law, there are no facts indicating that Plaintiff anticipated litigation in connection with the accident. Therefore, the Court finds that Plaintiff did not have a duty to preserve evidence during the period of time immediately following his accident because there has been no showing of Plaintiff's knowledge of the existence or likelihood of litigation at that time.

## IV. CONCLUSION

For the reasons above, Home Depot's motion for summary judgment is denied and the Defendants' motion for summary judgment is denied. An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: August 16, 2011